[887 NYS2d 465]

CHARLES McCOY et al., Plaintiffs, v METROPOLITAN TRANSPORTA-
TION AUTHORITY et al., Defendants.

Supreme Court, New York County, September 16, 2009

**APPEARANCES OF COUNSEL**

*Calano & Culhane, LLP*, for Charles McCoy, plaintiff. *Lester Schwab Katz & Dwyer* (*Darrell J. Whiteley* of counsel), for defendant.

**OPINION OF THE COURT**

HAROLD B. BEELER, J.

This is a decision after a framed-issue hearing held to determine whether as a matter of law a particular piece of construction equipment, the Gradall Material Handler Model 534B, is a "mobile crane" subject to the mobile crane regulations of the New York State Industrial Code, that is "Special Provisions for Mobile Cranes" (12 NYCRR 23-8.2), or a "forklift" subject only to the Industrial Code's regulations for forklifts, that is "Lift and Fork Trucks" (12 NYCRR 23-9.8).

This hearing was conducted pursuant to the Appellate Division, First Department's decision, on July 29, 2008, reversing the decision by the trial court denying defendants' motion for a framed-issue hearing to determine, as a matter of law, whether the Gradall was a mobile crane within the ambit of the Industrial Code. (*McCoy v Metropolitan Transp. Auth.*, 53 AD3d 457 [1st Dept 2008].) Previously, the Appellate Court allowed plaintiffs to amend their bill of particulars to allege violations of the Industrial Code without ruling on the character of the equipment at issue. (*McCoy v Metropolitan Transp. Auth.*, 38 AD3d 308 [1st Dept 2007].)

Factual Background

For the purposes of the hearing, the parties entered into a stipulation of facts addressing the circumstances which led to plaintiff's injuries. Briefly stated, plaintiff was part of a Nab Construction Corporation crew hired by Metropolitan Transportation Authority/Metro North Commuter Railroad which on February 1, 1999 was engaged in dismantling and transporting a steel beam that was part of falsework on the viaduct at 116th Street and Park Avenue. The beam, 20 feet long, 3 feet high and 1 foot wide, was secured to an attachment on the Gradall, removed from the falsework and lowered onto construction horses. The beam was then suspended from the boom of the Gradall by means of a hook, steel cable and choker located at the midpoint of the beam and lifted and hoisted from the horses.

The beam hung approximately one foot above the ground and six or seven feet in front of the Gradall as it was being moved to a scrap heap. Plaintiff and another worker were positioned at each side of the beam to hold it steady and prevent it from swinging back and forth. The crew was not provided with "tag lines"[1] to steady the beam. Plaintiff was positioned in front of the right front wheel of the Gradall, and his coworker was positioned in front of the left front wheel. The Gradall stopped

---

1. A tag line is a rope or cable attached to a suspended load to help steady it. The terms restraint line and guy line are also used.

at a traffic light at 117th Street and, when it moved forward after the light changed, the beam swung back at the plaintiff who braced himself with his left foot. Then, the Gradall's right front wheel ran over plaintiff's left foot and leg.

Legal Issue and Arguments

Whether the Gradall is classified as a mobile crane or a forklift under the Industrial Code is critical because 12 NYCRR 23-8.2 (c) (3), one of the "Special Provisions for Mobile Cranes," requires that tag lines be used to prevent the swinging of loads which may create a hazard while the forklift regulations at 12 NYCRR 23-9.8 do not have such a requirement.

The burden of proof is, as defendant acknowledges, on the defendant to prove that the Gradall is not a mobile crane within the meaning of the Industrial Code. The Industrial Code provides detailed regulations for the safe use of a mobile crane at 12 NYCRR 23-8.2, but does not specifically define what a mobile crane is. Defendant argues instead that the Gradall is a forklift covered by the Industrial Code's forklift regulations at 12 NYCRR 23-9.8 because the Gradall was manufactured as a rough-terrain forklift in accordance with the "Safety Standards for Rough Terrain Forklift Trucks" produced jointly by the American Society of Mechanical Engineers (ASME) and the American National Standards Institute (ANSI) (together as ASME/ANSI) designated as ASME/ANSI B56.6 (B56.6), rather than as a mobile crane in accordance with ASME/ANSI B30.5 (B30.5), the standards for "Mobile and Locomotive Cranes." According to defendant, these two ASME/ANSI classifications adopted in 1968 are mutually exclusive and that a machine, such as the Gradall, which was manufactured under the B56.6 standard and not under B30.5 cannot be a mobile crane.[2]

Defendant argues further that these ASME/ANSI classifications were in large part incorporated into the safety regulations of the Occupational Safety and Health Administration (OSHA) in 1971 and then into the Industrial Code in 1972, the last year that the Industrial Code was revised. Therefore, simply attaching a shackle and cable onto the beam of the Gradall manufactured under the B56.6 forklift standards does not convert it into a mobile crane which has distinct characteristics not found in

---

2.   Defendant consistently identifies the Gradall only as a forklift or a rough-terrain forklift. However, trial exhibits include various references by the manufacturer to the Gradall as a material handler (defendant's exhibit AA, plaintiff's exhibits 13, 17A) and a safety memo by Nab concerning the "Gradall material handling tool" (plaintiff's exhibit 12).

the Gradall, most significantly a superstructure which allows the crane to rotate 360 degrees and swing loads while the Gradall has a fixed boom which does not rotate, but only goes up and down and in and out.

Plaintiff argues that the ASME/ANSI manufacturing standards cannot simply be incorporated into the Industrial Code and that to do so in this case would contravene the express purpose of the Industrial Code which is to provide special protections for the safety of workers employed in the construction trades. Industrial Code (12 NYCRR) § 23-1.2 states that "the trades and occupations of persons employed in construction, demolition and excavation operations involve such elements of danger to the lives, health and safety of such persons and of persons lawfully frequenting the areas of such activities as to require special regulations for their protection." Plaintiff contends that it is the manner in which a piece of equipment is used and configured that determines which provisions of the Industrial Code apply rather than under which ASME/ANSI standard the equipment is manufactured. According to plaintiff, the Gradall is a "multipurpose" machine that can be operated as a forklift when lifting materials from below using forks or as a mobile crane when a cable is attached to the end of its boom to hoist and move materials. Plaintiff claims that he was injured when the Gradall was operated and configured as a mobile crane—a cable and choker were attached to the Gradall's boom with the forks removed in order to hoist and move the steel beam. Therefore, the mobile crane Industrial Code regulations apply, including the requirement that tag lines be used to protect against the swinging of a suspended load.

Multipurpose Machines

Multipurpose machines, designed to be configured in different ways so as to perform different functions, were apparently not in widespread use at the time the Industrial Code was last revised in 1972 and the drafters did not seem to contemplate multiple configurations of a single piece of construction equipment thus placing the equipment under different provisions of the Industrial Code depending on its use. Under the Industrial Code, a machine was classified as either a forklift or a mobile crane, but not potentially as both. However, since 1972, it has been recognized that different safety regulations can apply to a multipurpose machine depending upon its configuration and use. In fact, the 1987 version of B56.6 recognizes that the type of forklift manufactured under that standard and which was

involved in plaintiff's accident has the capability of hoisting and suspending loads by means of a crane arm or boom. B56.6-6.4.7 (a) (5) (addendum c, 1991) requires the "use of tag lines to restrain load swing whenever possible" and is no different than B30.5-3.2.1.4 (m) (1989), applied to mobile cranes, which mandates that in moving a load "[t]ag or restraint lines should be used to control swinging of the load." More recently, on October 9, 2008, OSHA released a 242-page proposed safety standard for cranes and derricks used in construction activities including "multi-purpose machines when configured to hoist and lower (by means of a winch or hook) and horizontally move a suspended load." (73 Fed Reg 59714, 59916, proposing 29 CFR 1926.1400 [a].) The proposed requirements for such equipment when traveling include "[a] tag or restraint line shall be used if necessary to prevent rotation of the load that would be hazardous." (73 Fed Reg 59714, 59934, proposing 29 CFR 1926.1417 [w].)

Court Rulings

Under recent New York case law, the interpretation and applicability of a particular regulation of the Industrial Code will turn on the manner in which the equipment is configured and operated rather than its name or label. In *Copp v City of Elmira* (31 AD3d 899 [3d Dept 2006]), the plaintiff was injured when he was struck by a 20-foot section of pipe which was being lifted onto a truck by a payloader. In *Copp*, the Appellate Division, Third Department held that Industrial Code § 23-9.4, the regulation applicable to power shovels, also applied to the payloader at issue,[3] even though payloaders are not specifically referenced in section 23-9.4. In ruling that a payloader came under Industrial Code § 23-9.4, the court held that "where, as here, construction equipment is used to attempt to accomplish the same task as a power shovel, it would be inconsistent with the purpose of the regulation and cause an objectionable result to find the safety precautions regarding lifting materials inapplicable" (31 AD3d at 900). In *Smith v Hovnanian Co.* (218 AD2d 68 [3d Dept 1995]), the focus was also on how the construction equipment was used rather than on the type of device involved. In that case, the Court held that Industrial Code § 23-8.2 (c) (3), the same mobile crane regulation at issue in the instant action, may have been violated when no tag lines were

---

**3.** Both are mobile earthmoving machines. A payloader has a large, movable blade or scoop at the front attached to the chassis while a power shovel has a boom with an attached hinged bucket.

used to protect the plaintiff from the horizontal swinging of sheetrock which was being unloaded from a flatbed truck by an extension boom attached to the truck. And, in *Borowicz v International Paper Co.* (245 AD2d 682 [3d Dept 1997]), the Court again interpreted the Industrial Code in a manner consistent with the function of the machinery rather than on how the equipment was defined or named. The Court held in *Borowicz* that the plaintiff had made out a prima facie case of a violation of Industrial Code § 23-9.7 (c), entitled "Motor Trucks" and relating to the safe loading of motor trucks, as a result of being injured by the sudden shifting of a load being transported by a gas-powered scissor lift, a device not usually considered a truck.

Conclusion

The above cases clearly demonstrate that the Industrial Code is to be broadly interpreted so as to further its purpose of providing persons employed in construction with safe working conditions and safe places to work. It is unreasonable to conclude that the Industrial Code was not intended to protect workers from the dangers involved in the hoisting and transporting of suspended loads by a forklift simply because at the time the Industrial Code was drafted it was not contemplated that a forklift had the capability to perform those functions. The Code was designed to protect against the dangers involved in such operations whether encountered in the use of a machine called a mobile crane or a forklift. For a more technologically advanced multipurpose machine, manufactured as a rough-terrain forklift, but configured and operating as a mobile crane at the time of the accident, to fall outside of the purview of the mobile crane safety regulations found at Industrial Code 12 NYCRR 23-8.2 would lead to an unwarranted result inconsistent with the objectives of the Industrial Code. Therefore, the Gradall Material Handler Model 534B which injured plaintiff was subject to the mobile crane safety regulations found at Industrial Code 12 NYCRR 23-8.2.